IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHAUNCEY BENNETT, #259742 | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. JKB-17-302 |
| WARDEN JOHN WOLFE | * | |
| WARDEN FOXWORTH | | |
| LT. WHITE | * | |
| LT. VALERIE STYLES | | |
| LT. TROXELL[1] | * | |
| STEPHEN T. MOYER | | |
| | * | |
| Defendants. | | |
| | ***** | |

## **MEMORANDUM**

Pending before the court are a motion to dismiss or, alternatively, for summary judgment filed by defendants (ECF No. 17) and Chauncey Bennett's opposition. ECF No. 20. Upon review of the pleadings, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion IS GRANTED.

### **I. Complaint Allegations**

Plaintiff Chauncey Bennett, an inmate currently confined at Eastern Correctional Institution ("ECI") in Westover, Maryland, filed this complaint alleging that when on ECI "lockdown" he is not receiving his cardiovascular ("CV") diet and is being "forced" to eat regular meals. He further contends that while on lockdown he is not obtaining the proper

---

[1] The Clerk shall amend the docket to reflect the correct names of defendants White, Styles, and Trotl as Lt. Ruby White, Lt. Valerie Styles, and Lt. Troxell.

servings, sugar substitutes, or hot cereal suitable for someone on a CV diet. Bennett additionally claims that he was retaliated against (given smaller food portions) for filing an administrative remedy procedure (ARP) grievance against a dietary official and he was denied medical treatment due to the negligence of a dietary official. ECF No. 1, pp. 4-7. He seeks punitive, compensatory, and other damages, as well as double food portions, the honoring of his CV diet, outside hospital examinations, and other miscellaneous relief.[2] *Id.*, p. 4.

In later filings construed as supplemental complaints, Bennett continues to complain about the receipt of food that contains small portions, is unhealthful, and is non-compliant with his CV diet. ECF Nos. 5-7, 9-10, 13, 15, & 19.

## II. Dispositive Responses

Defendants acknowledge that Bennett was placed on a CV diet by the medical provider. ECF No. 17-2, pp. 2-5.[3] They assert that the CV diet is designed to provide less fat, sodium, and cholesterol than regular diets. Certain foods are prohibited, including but not limited to commercial soups, bouillon cubes, salted snacks, chili sauce, pickles, seasoning salts, all canned, salted, or smoked meats or processed lunch meats, food in brine, commercially baked products or pastries, chocolate, fatty meat, regular peanut butter, processed cheese and cheese spreads, potato chips, candy containing nuts, and canned baked beans. Defendants affirm that Bennett's CV diet allows all cereal, sugar, jam, and jelly. ECF No. 17-3, Troxell Decl. and ECF No. 17-3, pp. 6-8.

---

[2] In attachments to his complaint, Bennett presents ARPs filed regarding the denial of medical treatment for a hot water burn, the small portions and non-dietary food received on his meal trays, and a verbal threat from a correctional officer. He additionally filed letters, incident reports, and matters of record concerning medical and job assignments. ECF No. 1-1.

[3] All references to exhibits are made to the electronic pagination.

Defendants argue that from March 28, 2016, through May 8, 2017, Bennett placed commissary orders for foods prohibited by his CV diet, including pre-packaged ramen soups, food items in brine or hot sauces, and foods containing large amounts of sodium, *i.e.*, pickles, packaged chips, party mixes, and meats. Bennett's commissary orders additionally included commercially baked pastries. ECF No. 17-4, Shumaker Decl. and ECF No. 17-4, pp. 2-35. Defendants note that while Bennett complains about being served cereal, he is expressly permitted to have cereal on the CV diet and he ordered cereal from the commissary. ECF No. 17-3, pp. 7-8 and ECF No. 17-4, pp. 14 & 21.

Defendants affirm that records from 2016 and 2017 show that Bennett consistently received his medically ordered CV diet and there were times when he chose not to present himself for his diet, including occasions when he obtained food from the regular diet. ECF No. 17-3, Troxell Decl. and ECF No. 17-3, pp.16-31. They maintain that on any occasion when Bennett believed he was served a meal that was not in compliance with his CV diet, he had the opportunity to notify personnel and to obtain a corrected food tray.[4] ECF No. 17-3, Troxell Decl.

In his opposition, Bennett alleges that defendants' motion demonstrates "liability, negligence, and retaliation." ECF No. 20. He claims he has been able to order prohibited items from the commissary since arriving at ECI. Bennett contends that he orders canned soups in order to obtain fruits, as well as other healthful items. He asserts that he has no authority to

---

[4] Defendants also respond to Bennett's secondary claims found in his ARPs. They assert that he received treatment for an August 9, 2016, burn to his foot, he was terminated from his job with the Dietary Department for cause, and the notices of infraction complained of were not disputed by Bennett. ECF No. 17-2, pp. 6-11, ECF No. 17-5, Turner Decl., and ECF No. 17-4, pp. 36-58.

3

question staff and, as they are aware of his diet, they should ensure that inmates are fed in accordance with their diet. He claims that while on lockdown he was deprived of medical diet bags and a hot meal on the third day of the lockdown. ECF No. 20.

### III. Standard of Review

**Motion for Summary Judgment**

Because defendants have filed and relied on declarations and exhibits attached to their dispositive motion, their motion shall be treated as a summary judgment motion. Summary Judgment is governed by Federal Rule of Civil Procedure 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

4

The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson,* 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## IV. Analysis

A.     **Respondeat Superior**

Under *Shaw v. Stroud,* 13 F.3d 791 (4th Cir. 1994), supervisory liability may attach under 42 U.S.C. § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799 (citations omitted).

No allegation demonstrates the supervisory liability of Wardens Wolfe and Foxworth or Secretary Moyer with regard to the dietary concerns at issue here. *See Shaw*, 13 F.3d at 799. Indeed, aside from Bennett's self-serving and conclusional statements, there is no evidence that these administrators had actual or constructive knowledge of alleged problems with the distribution of Bennett's CV diet meals or that any delay in correcting the problem posed "a pervasive and unreasonable risk" of constitutional injury to Bennett. The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Bennett's claim with regard to the Wardens and Secretary are based on their supervisory positions. They do not appear to have been personally involved in the issues

presented here or had actual or constructive knowledge thereof. Accordingly, Wardens Wolfe and Foxworth and Secretary Moyer are entitled to summary judgment as a matter of law.

The court shall next examine whether summary judgment in favor of the individual defendant correctional officers would be appropriate.

**B.     Dietary Claims**

In *Farmer v. Brennan*, 511 U.S. 825 (1994) the Supreme Court stated that the Eighth Amendment imposes a duty on prison officials to provide inmates with "adequate food." *Farmer*, 511 U.S. at 832. Several Circuits have reasoned that this duty includes an obligation to provide a medically appropriate diet when necessary. The Fourth Circuit Court of Appeals has held that the Eighth Amendment requirement that inmates receive special diets when medically appropriate is not without limit and that prison officials may comply with this directive when they furnish food that a complaining inmate is able to eat without compromising his health. *See Scinto v. Stansberry*, 841 F.3d 219, 233-34 (4th Cir. 2016). The Tenth Circuit has stated that the Eighth Amendment "requires officials to provide inmates with a special diet if such an accommodation is medically necessary." *Frazier v. Dep't of Corr.*, 125 F.3d 861, 1997 WL 603773 at *1 (10th Cir. 1997) (unpublished) (citing *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983)). The Seventh Circuit has noted that the Eighth Amendment "assures prisoners a medically and nutritionally sound diet." *Jackson v. Hanlon*, 923 F.2d 856, 1991 WL 3056 at *1 (7th Cir. 1991) (unpublished).

The Fourth Circuit has recognized the well-established principal that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"

*Shrader v. White,* 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). The failure to meet an inmate's basic nutritional needs is considered cruel and unusual punishment because the inmate relies on prison officials to provide food.

Assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. *See Divers v. Dep't of Corrs.,* 921 F.2d 191, 196 (8th Cir. 1990). Although Bennett complains that the food at ECI was nutritionally inadequate, he presents no factual allegations supportive of this conclusional assumption. He does not allege that he became sick from the food served to him, that he lost a significant amount of weight, that it was spoiled, or that the number, portions, or frequency of meals caused a documented deterioration of his physical or mental health.

The exhibits show that Bennett was placed on a CV diet, which has been routinely renewed on an annual basis. Defendants observe that he has failed to establish that the alleged variance from the CV diet was a serious deprivation of his basic needs as (1) the evidence demonstrates that he did not adhere to the CV diet himself as he ordered multiple commissary items with high levels of sodium and fat; (2) his being served hot cereal, jelly, and sugar did not violate his food regimen because they are expressly permitted on the CV diet; and (3) defendants' exhibits show that steps were taken to provide Bennett items on his CV diet and with few exceptions (when Bennett did not present himself to receive his CV diet), he received his CV diet. The court concurs. Bennett has not shown an objective injury arising from the

alleged non-compliance. No Eighth Amendment violation has been demonstrated.[5] As such, defendants are entitled to summary judgment.[6] A separate Order follows.

Date: August 18, 2017 _____/s/_____
James K. Bredar
United States District Judge

---

[5] As no Eighth Amendment claim has been demonstrated, the court need not address the defendants' immunity or administrative exhaustion arguments.

[6] A "complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *French v. Smith*, Civil Action No. CCB-08-3476, 2012 WL 831881, *6 (D Md. 2012), *aff'd*, 475 F. App'x 879 (4th Cir. 2012) (internal quotation marks and citations omitted). Bennett has no constitutional right to prison employment and has no liberty interest in being assigned to a specific job. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (per curiam); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987). Consequently, Bennett's removal from his dietary job does not violate due process.